**UNITED STATES COURT OF FEDERAL CLAIMS**

_____
CB&I AREVA MOX SERVICES, LLC,   )
                                )
            Plaintiff,          )        Case. Nos.  16-950C; 17-2017C; 18-80C;
                                )        18-522C; 18-677C; 18-691C; 18-921C
     v.                         )        (consolidated)
                                )
THE UNITED STATES OF AMERICA,   )        (Judge Wheeler)
                                )
            Defendant.          )
_____)

## PLAINTIFF'S RESPONSE TO MOTION FOR PARTIAL RECONSIDERATION

Defendant's motion for partial reconsideration needlessly flyspecks an observation by this Court in its June 11, 2018, Opinion and Order, and should be denied.

## I.    RULES 54 AND 59 DO NOT APPLY TO DEFENDANT'S CRITIQUE

Defendant's motion states that Rules 54(b) and 59(a) provide that the Court can excise statements from its Order, "'as justice requires,'" or if doing so is "'necessary to prevent manifest injustice'."  Dkt. 82, Motion for Partial Reconsideration, at 2 (citations omitted).

All of the cases cited by Defendant that set the standard of review under Rules 54 and 59 show that "injustice" under these Rules concerns unwarranted legal jeopardy, an element that is absent here.  In _Griswold v. United States,_ 61 Fed. Cl. 458 (2004), cited at Dkt. 82 at 2, the potential injustice concerned whether a federal district court, this Court, or neither, had jurisdiction over the case.  _Id._ at 459.  Both _Whispell_ and _Farmers Cooperative,_ cited at Dkt. 82 at 2, rails-to-trails Takings Clause cases, concerned rights to land following a railroad's abandonment of a right-of-way.  _Whispell Foreign Cars, Inc. v. United States,_ 106

Fed. Cl. 777, 789 (2012); *Farmers Cooperative Co. v. United States,* 100 Fed. Cl. 579, 583-84 (2011).

Here, by contrast, the government has identified no unjust legal consequence flowing from the complained-of statement in the Order.  Defendant has identified no instance where either Rule was the basis to strike a court's remark that was poorly received by a party to the action.

There is good reason that Rules 54 and 59 have only been used to address instances of legal injustice.  There is significant value in the Court's willingness to express its view of certain aspects of the case.  Such statements may convey useful information to the litigants as they develop the record, frame their presentations and arguments, and conduct ongoing settlement assessments.  The anodyne and bloodless Court decisions advocated by the Government simply are not as valuable as ones that, beyond getting the law right, are forthcoming about the Court's views of interactions between and positions taken by the parties.  This rationale is even more powerful where, as here, the Court acts as a factfinder.

## II.     THE TIMING OF THE COFD SUPPORTS A REASONABLE AND LOGICAL CONCLUSION THAT THE CLAWBACK WAS A "LIKE FOR LIKE" RESPONSE TO PLAINTIFF'S CERTIFIED CLAIM FOR INCENTIVE FEE

Defendant's motion is not only legally infirm.  There is ample uncontroverted evidence to support the Court's observation that the claw back of the provisional incentive fee was a tactic deployed by NNSA to gain leverage over MOX Services.  The Court is thus correct that its conclusion in this regard was "reasonable and logical under the circumstances presented."  *See* Dkt. 84 at 2.

The uncontroverted timeline of events relevant to the case includes that NNSA's last quarterly incentive fee payment to MOX Services was for the fourth quarter of

2010.  This meant that, at least in NNSA's view, MOX Services had failed to meet the

schedule and/or cost parameters for earning incentive fee in the first quarter of 2011.  Then,

about a year later, in January 2012, NNSA requested that MOX Services prepare a

"Rebaseline Proposal" to include new cost and schedule estimates for completing

construction of the facility.  *See* Dkt. 21-1 at 107 of 721 (Incentive Fee certified claim citing

undisputed fact of NNSA January 2012 letter directing MOX Services to prepare a rebaseline

proposal).

NNSA's inception of the rebaselining process in January 2012 meant that

NNSA believed that the original Option 1 schedule and/or cost estimates were no longer

attainable, and should be updated through an official congressional notification and budget

planning process.  Yet, it was not until MOX Services submitted its certified claim for

incentive fee entitlement that, in the responsive COFD, NNSA took the position that

incentive fee previously paid to MOX Services on a provisional basis must be paid back

because under the original Option 1 cost and schedule parameters, "no Incentive Fee has

been earned or is prospectively earnable under the contract."  Dkt. 25-1 (COFD, Appx. Item

3 at 5-6) (concluding that in order for provisional incentive fee to vest with the contractor

MOX Services had to complete the project by the original Period of Performance of October

14, 2016, and within the original Estimate-at-Completion (EAC) value of $3.8 billion).  In

other words, in the COFD, NNSA considered the schedule and cost parameters for

determining entitlement to incentive fee to have been fixed at the original Option 1 values.

The NNSA's clawback COFD was issued on December 7, 2016.  Dkt. 25-1

(Appx. Item 3).  This was nearly ***five years*** after NNSA's January 2012 direction that MOX

Services prepare a rebaseline proposal that necessarily acknowledged that the original cost

and schedule estimates for MFFF construction would not be met.  In the face of this undisputed timeline, NNSA implausibly maintains that the government did not "retaliate" or "return like for like" in including the clawback COFD in the same letter as the COFD that denied MOX Services' certified claim for entitlement to unpaid incentive fees.  *See* Dkt. 96 at 2.

The Court's contrary conclusion – that the clawback COFD was in retaliation to MOX Services' certified claim – is reasonably and logically supported by the observation that  sometimes "offense is the best defense."  Contracting Officer Nyman admits that NNSA officials "deliberated over the return of the $21.6 million for years prior to [his May 2015] arrival to NNSA."  Dkt. 96 at 13 (Declr. ¶5); *see id.* at 12 (Declr. ¶1).  And CO Nyman's predecessor had previously concluded that that the $21.6 million should be recovered.  *Id.* at 13 (Decl. ¶6).  The Government offers no alternative for its five-year delay in clawing back provisional incentive fee, save for the tepid statement that the clawback "letter could not be sent until further approval was given."  Dkt. 96 at 13 (Declr. ¶6).

Additionally, there can be no doubt that NNSA understood that the clawback would provide the Agency leverage over MOX Services in negotiating and settling MOX Services' incentive fee claim.  The government did not defer collection of the clawback amounts pending adjudication of the claims; rather, it demanded payment within 30 days. Dkt. 25-1 (Appx. 3 at 7).

As to the "baselessness" of the clawback, CO Nyman attempts to make much of the long and considered deliberations over the clawback of provisional incentive fees he states occurred.  Dkt. 96 at 13 (Declr. ¶¶4-6).  Even assuming that these statements are true, the timing of the clawback casts serious doubt as to the true purpose of the COFD's demand

for immediate repayment of the $21.6 million.  It strains credulity to believe that NNSA

would have all of a sudden clawed back provisional incentive fee if not for the triggering

event of MOX Services' certified claim.  And, as to the baselessness of the clawback, the

Court found that the contract "unambiguously provide[s] that the incentive fee NNSA pays

to MOX Services is to remain in the custody of MOX Services until MFFF construction is

completed."  Dkt. 76 at 9.

## III.   OTHER ACTIONS BY THE GOVERNMENT SUPPORT THE COURT'S CONCLUSION THAT THE CLAWBACK WAS RETALIATORY

In addition to the too-suspect-to-be-coincidental timing of the clawback, other

actions taken by the government in this case justify the Court's conclusion that the clawback

was retaliatory.  To name two, the government has taken frivolous and unsupported positions

that caused MOX Services needlessly to incur legal costs, and the government refused to

defer collection of the unallowed costs identified in the 2010 incurred cost audit.

### A.   NNSA Rejected MOX Services' Certified Claim For Costs Incurred In Preparing The Incentive Fee REA On A Frivolous Basis

That NNSA clawed back the $21.6 million in provisional incentive fee in

baseless retaliation for MOX Services' submission of its affirmative claim for unpaid

incentive fee is supported by NNSA's actions with respect to MOX Services' related claim to

recover the costs of preparing the request for equitable adjustment for incentive fee.  That

REA was later certified, and is the basis of Count I of the present matter.  The recovery of

REA preparation costs comprises Counts IV and V.  *See* Dkt. 21, Supplemental Complaint.

NNSA rejected MOX Services' certified claim for REA preparation costs on

the primary basis that Plaintiff's incurrence of legal fees for this purpose did not comport

with 10 C.F.R. §719.[1]  *See* Dkt. 1-2 at 6-7 of 11.  CO Nyman states in his declaration that he would not take official actions "unless [he] believed that the decision was consistent with the Contract and all applicable laws, regulations, and policy guidelines."  Dkt. 96 at 13 (Declr. ¶6).  And he declared that his contract administration actions are taken under the advice of NNSA counsel.  *Id.* ¶3.

Yet, at oral argument on the incentive fee clawback motions, government counsel did not even attempt to defend the CO's position that 10 C.F.R. §719 applies where the prime contractor claims on its own behalf that the government is liable for certain costs. *See* Dkt. 76, Order, at 11-12 (stating that Defendant conceded in the hearing that 10 C.F.R. §719 did not apply).  It stands to reason to conclude that NNSA took the frivolous position with respect to REA preparation costs under 10 C.F.R. §719 because NNSA was displeased that MOX Services submitted the underlying REA, and only in retaliation.  This clearly supports the Court's observation that the clawback COFD was also in retaliation to the claim.

**B.      Until The Government's Admission In The Current Filings That the Clawback Is A Government Claim, MOX Services' Incurred Significant Costs In Combatting NNSA's Position That The Clawback Was Somehow A Contractor Claim**

The government's new acknowledgement that NNSA's claw back of the $21.6 million constitutes a government claim comes with ill grace.  This acknowledgment follows several attempts by the government to convince the Court that the clawback COFD was not a government claim, but a contractor claim over which MOX Services had failed to satisfy jurisdictional prerequisites.

---

[1] This DOE regulation requires certain contractors to maintain a "Legal Management Plan," under which DOE must approve outside counsel. The regulation allows DOE to supervise or control litigation that prime contractors conduct on DOE's behalf.

In his declaration, Contracting Officer Nyman states that he "asserted ***NNSA's claim***" regarding the clawback based on his review of the contract language.  Dkt. 96, Declr. ¶6.  Likewise, over a dozen times the Government's Brief refers to the clawback as the "Government's claim" (Dkt. 96 at 1, 2, 3, 4 (twice), 7 (four times), 9)) or to the contracting officer's decision to "assert the claim." Dkt. 96 at 2, 7 (seven times).

These acknowledgements that the clawback COFD constituted a "Government claim" directly contradict the Government's empty, but repeatedly forwarded, litigation position that the Court had no jurisdiction over Count II because the clawback action was a contractor claim for which MOX Services had failed to submit a certified claim.  *See* Dkt. 31, Def's Motion for Partial Dismissal, at 21-23 (arguing that the clawback claim must be dismissed because MOX Services failed to present the cause of action to the contracting officer"); Dkt 34, Def's Motion to Defer Summary Judgment Briefing, at 3 (asserting that Count II "[was] not presented to the contracting officer.  In the absence of a valid claim and a contracting officer's final decision, the Court lacks jurisdiction and the complaint must be dismissed."); Dkt. 43, Def's Reply in Support of Motion for Partial Dismissal, at 14 (same).[2]

The Government's late, casual admission that the clawback action was a Government claim underscores the frivolousness of its previous contrary position, which nonetheless caused MOX Services to incur significant legal fees to rebut.  *See* Dkt. 39, Pl's

---

[2]  Indeed, in the Motion for Partial Dismissal, Defendant argued that presentment was necessary to give the contracting officer a fair opportunity to interpret the contract language in dispute.  Dkt. 33 at 22.  In light of this argument, it is ironic that CO Nyman's declaration now states that his contract interpretation determination on the clawback was made after years of NNSA deliberation over the incentive fee terms by numerous senior NNSA contracting officials (*id.* ¶¶4-5), was shared by his predecessor CO (*id.* at 5), and was made under the advice of NNSA counsel.  *Id.* ¶3.

Opposition to Partial Motion to Dismiss, at 17-20; Dkt. 37, Pl's Motion to Reconsider the

Court's Order to Stay Summary Judgment Briefing, at 4, 7).

       **C.**     **The Government Refused to Enter a Deferment Agreement Regarding
Costs Deemed Unallowable Under the 2010 Incurred Cost Audit**

       The government's refusal to defer collection on the amounts it determined

were unallowable pursuant to the 2010 incurred cost audit has been noted by the Court.  *See*

Dkt. 80, Order, at 2.  It is fair to characterize the Court's view of the government's motive in

refusing to defer collection, expressed in the June 27, 2018, hearing, as skeptical.  In sum and

substance, the Court expressed the view that there should be some consequence for the

government's refusal to defer collection under FAR 32.607-2, which deferments are granted

in the mine run of cases that present similar circumstances.

## IV.    CONCLUSION

       The Court was acted well within its discretion to announce that it found

NNSA's claw back "troubling," and as a way to "gain leverage over MOX Services through

baseless retaliation."  The government's motion should be denied.

Dated: July 27, 2018               Respectfully submitted,

                                    **ROGERS JOSEPH O'DONNELL**

                                    /s/Mark J. Linderman
                                    Mark J. Linderman (Lead Counsel of Record)
                                    Dennis J. Callahan
                                    Stephen L. Bacon
                                    ROGERS JOSEPH O'DONNELL
                                    311 California Street, 10th Floor
                                    San Francisco, CA 94104
                                    (415) 956-2828 (Telephone)
                                    (415) 956-6457 (Facsimile)
                                    mlinderman@rjo.com

W. Brad English
J. Andrew Watson, III
Jon D. Levin
Emily J. Chancey
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street
Huntsville, AL 35801
(256) 512-5705 (Telephone)
(256) 512-5740 (Facsimile)
benglish@maynardcooper.com

Paul A. Debolt
Emily A. Unnasch
Christopher G. Griesedieck
Chelsea B. Knudson
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-8384 (Telephone)
(202) 344-8300 (Facsimile)
padebolt@venable.com

*Attorneys for Plaintiff CB&I AREVA MOX
Services, LLC*